```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
                              :
ROSE GRAY,                    :
                              :
        Plaintiff,            :
                              :   04 Civ. 3736 (KMW)(JCF)
             v.               :   Opinion & Order
                              :
MICHAEL J. ASTRUE,            :
Commissioner of Social        :
Security,                     :
                              :
        Defendant.            :
                              :
------------------------------x
```

WOOD, U.S.D.J.:

   Plaintiff Rose Gray ("Gray") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of a determination of the Commissioner of Social Security ("Commissioner") that Gray is ineligible for Supplemental Security Income ("SSI") disability benefits.

   Both Gray and the Commissioner have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). On October 3, 2007, Magistrate Judge Francis issued a report and recommendation (the "Report"), familiarity with which is assumed, addressing these motions. The Report recommends that the Court (1) vacate the Commissioner's decision that Gray has made an insufficient showing of her mental impairment's severity and duration; and (2) remand the case pursuant to the fourth sentence of 42 U.S.C. § 405(g), for further administrative proceedings on

1

whether Gray is disabled.  On October 22, 2007, the Commissioner filed timely objections to the Report.

For the reasons stated below, the Court adopts the Report's recommendations, but modifies the Report's analysis, in order to address the Commissioner's objections, and more fully explain why the Commissioner was in error below.

## I. Background

Here, the Court summarizes the facts and procedural history most relevant to the Court's current decision.  A more thorough recitation of the facts and procedural history is set forth in the Report.

### A. Gray's Application for SSI Benefits; Initial Consideration by the Social Security Administration ("SSA")

Gray filed her application for SSI benefits on the basis of disability in February 2001.  In her application, Gray alleged that since 1998 she had suffered from various physical impairments which limited her ability to work.  Specifically, she stated that she suffered from high blood pressure, left lower extremity edema, and joint pains.  (R. 55.)  Gray also noted that she had been hospitalized for other physical ailments, including, inter alia, asthma, anemia, and chronic lower back pain.  (R. 77.)

On July 2, 2001, the SSA denied Gray's application.  The SSA concluded, based on the reports of consulting medical examiners,

that despite her physical impairments, Gray retained the capacity to perform "light work."  (R. 48.)

    B.   <u>Hearing Before the Administrative Law Judge "ALJ"; Gray's Mental Impairment</u>

Gray then requested a hearing before an ALJ on the issue of her disability.  In advance of the hearing, Gray submitted supplemental materials to the SSA.  These materials included information that Gray had been prescribed, and had begun taking, the prescription medication Remeron for "stress."[1]  (R. 84.)

Gray appeared <u>pro</u> <u>se</u> before ALJ Edgell on April 30, 2002.  At the hearing, Gray directly informed the ALJ that she was taking Remeron for stress.  (R. 238.)  The ALJ then questioned Gray about her mental health.  The following exchange ensued between them:

> ALJ: Have you seen a psychiatrist?
> Gray: Yes.  I had an appointment yesterday.  I have to go back tomorrow.
> ALJ: For the first time --
> Gray: Yes.
> ALJ: -- you saw them?  So how long have you been taking Remeron?
> Gray: Since last year.
> ALJ: And the regular, regular doctor prescribes it to you?
> Gray: Give – yeah.  Uh-huh.
> ALJ: And she didn't look for you [sic] to a psychiatrist until yesterday?
> Gray: Yes.
> ALJ: And what symptoms were you having that made her refer you to a psychiatrist?

---

[1] According to the documents submitted by Gray, she was prescribed Remeron by Dr. Korenstein.  (R. 84.)

>     Gray: I wasn't sleeping at nights.  A lot of stress.
>     Sometimes I forget these [sic].
>     ALJ: And how does the Remeron work?
>     Gray: It doesn't help.
>     ALJ: It does not help?
>     Gray: No.

(R. 238-39.)

During this exchange, the ALJ did not ask Gray what doctor prescribed the Remeron for her, other than to ascertain that it was a "regular doctor."  The ALJ did ask Gray the name of the psychiatrist, Dr. Stewart, whom Gray had begun seeing one day before the hearing.  (R. 244.)

    C.  <u>Evidence of Gray's Mental Impairment</u>

Based on Gray's testimony at the hearing, the ALJ determined that before she could rule on whether Gray was disabled, further inquiry was needed regarding Gray's potential mental impairment.  The ALJ subpoenaed records from Dr. Stewart.  The Medical Records Office at Mt. Sinai Hospital, where Dr. Stewart was employed, complied with the subpoena on Dr. Stewart's behalf.  The ALJ did not re-contact Gray's primary doctor, Dr. Foldes, or contact the doctor who prescribed for Gray the Remeron, Dr. Korenstein, to obtain information about Gray's mental impairment.

Dr. Stewart's records indicate that Gray was referred to the Mt. Sinai Psychiatry Department in April 2002 because "her severe depression [had] not responded to the 30mg of Remeron . . . prescribed for her."  (R. 224.)  At Gray's first appointment with Dr. Stewart, Gray reported that she had been suffering from

4

depressive symptoms, including depressed mood, crying bouts, poor sleep, decreased concentration and interest, and passive suicidal ideation, for over two years. (R. 218.) Gray stated that her depression started shortly after her mother died, and that she had been taking Remeron since November 2001 without effect. (R. 223.) Gray also indicated that she suffered from anxiety, and had palpitations, sweating, and shortness of breath. (R. 222.) Gray reported experiencing claustrophobia in elevators and subways, which induced panic attacks. (R. 222.) Dr. Stewart diagnosed Gray as suffering from major depression, panic disorder, agoraphobia, and simple phobia. (R. 221.)

In addition to subpoenaing his records, the ALJ sent Dr. Stewart a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" (the "Questionnaire") for his completion.

Dr. Stewart responded to the Questionnaire by letter dated May 15, 2002. At that point, Dr. Stewart had seen Gray two times, once for a psychiatric evaluation and once for initiation of treatment. In his letter, Dr. Stewart stated that he was unable to respond to the Questionnaire because "the questions require[d] a longitudinal view of the patient" and he felt that "it would be premature . . . to make determinations in this regard after only two meetings with the patient." Dr. Stewart stated that before he could evaluate the impact of Gray's mental

impairment on her ability to work, he would need to see Gray over a longer time period and evaluate "how well she adheres to and responds to the treatment." Dr. Stewart did confirm, however, that Gray was suffering from major depressive disorder, which "frequently impairs judgment, concentration, attention, motivation, and often renders sufferers quite limited in their ability to maintain the responsibilities associated with the work environment."

D.  <u>ALJ's Decision</u>

On June 26, 2002, the ALJ issued a decision finding that Gray was not disabled as defined by the Social Security Act. With regard to Gray's physical impairments, the ALJ found that although they were severe and met the duration requirement, Gray retained residual functional capacity ("RFC") to perform work. (R. 20.)  With regard to Gray's mental impairment, the ALJ stated:

> In evaluating the severity of the claimant's depressive disorder, the record indicates the claimant was newly diagnosed with mental impairment in April 2002 . . . . The claimant denied any past history of psychiatric illness.  The treating psychiatrist, Dr. Stewart advised it is too premature to make any determinations on the claimant's ability to engage in basic work activity, considering the recent onset of the depression . . . . Overall, the medical evidence and primarily the opinion from treating psychiatrist Dr. Stewart reveals the depressive disorder has yet to last or be expected to last at least 12 consecutive months. As such, the depressive disorder has not meet [sic] the duration requirement in establishing a severe mental impairment.

6

(R. 16.)  The ALJ concluded, "[t]he claimant's depressive disorder has yet to meet the duration requirement, and therefore is considered a nonsevere impairment."  (R. 21.)

In August 2002, Gray requested review by the Appeals Council of the ALJ's decision.  (R. 9.)  On March 2, 2004, the Appeals Council denied Gray's request, and the ALJ's decision became the final decision of the Commissioner.  (R. 3.)

E.  <u>Instant Case; Report and Objections</u>

Gray initiated the instant case on May 17, 2004, seeking judicial review of the Commissioner's decision.

In May 2007, the Commissioner moved for judgment on the pleadings.  In his motion, the Commissioner argues that the ALJ's finding that Gray was not disabled was supported by substantial evidence, and accordingly, that the ALJ's decision should be affirmed by this Court.

In June 2007, Gray cross-moved for judgment on the pleadings.  Gray's motion concedes that the ALJ's finding that Gray retained physical RFC was supported by substantial evidence, but argues that the ALJ erred in law and in fact in ruling on the severity and duration of Gray's mental impairment.  Gray, therefore, asks the Court to vacate the ALJ's decision below, and remand for further proceedings on her mental impairment.

The Court referred both motions to Magistrate Judge Francis. On October 3, 2007, Magistrate Judge Francis issued his Report,

recommending that the Court deny the Commissioner's motion and grant Gray's motion. On October 22, 2007, the Commissioner filed objections to the Report. The Court now considers the Report in light of the Commissioner's objections.

II. <u>Analysis</u>

   A. <u>Standard of Review</u>

      1. <u>Review of a Magistrate Judge's Report and Recommendation</u>

When reviewing a report and recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

The court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997) (internal citations omitted). Objections should be specific, and clearly aimed at particular findings in the magistrate judge's proposal. <u>Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan</u>, 806 F. Supp. 380, 382 (W.D.N.Y. 1992). To the extent that a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error. <u>See</u> <u>Pearson-Fraser v. Bell Atl.</u>, No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); <u>Vargas v.</u>

Keane, No. 93 Civ. 7852 (MBM), 1994 WL 693885 at *1 (S.D.N.Y. Dec. 12, 1994).

        2.    <u>Judicial Review of Commissioner's Decision</u>

When reviewing the Commissioner's decision pursuant to 42 U.S.C. § 423(a)(1), the Court must consider: (1) whether the Commissioner applied the correct legal principles; and (2) whether substantial evidence supports the Commissioner's determination.  <u>See</u> 42 U.S.C. § 405(g); <u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  It is the responsibility of the Court "to conduct a searching inquiry and to scrutinize the entire record, having in mind that the Social Security Act . . . is remedial in purpose."  <u>McBrayer v. Secretary of Health & Human Servs.</u>, 712 F.2d 795, 798-99 (2d Cir. 1983).

The court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand.  42 U.S.C. § 405(g); <u>Butts v. Barnhart</u>, 388 F.3d 377, 384 (2d Cir. 2004).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996).

B. <u>Application</u>

Having thoroughly reviewed the record and the parties' arguments, the Court agrees with the Report's recommendations that the Court should grant Gray's motion, deny the Commissioner's motion, vacate the ALJ's decision as to Gray's mental impairment, and remand for further proceedings. The Court adopts the Report's recommendations, but modifies the Report's analysis in order to address the Commissioner's objections, and more fully explain why the Commissioner was in error below.

1. <u>Durational Requirement and Severity</u>

In the Report, Magistrate Judge Francis concludes that the ALJ erred in her analysis of the severity and duration of Gray's mental impairment. Magistrate Judge Francis finds (1) that the ALJ's conclusion that Gray's mental impairment was of recent onset was not supported by substantial evidence; (2) that the ALJ, by discussing only the duration of Gray's mental impairment and not the functional limitations resulting from it, failed in her duty to sufficiently explain her conclusion that Gray's mental impairment was not severe; and (3) that the ALJ failed in her duty to fully investigate and develop the record of Gray's mental impairment.

The Commissioner objects to each of these three findings. He argues (1) that the ALJ's conclusion regarding the duration of Gray's mental impairment was supported by substantial evidence,

and that Magistrate Judge Francis was incorrect to find that the ALJ should have applied Social Security Ruling ("SSR") 83-20 in determining the date of onset; (2) that the ALJ reasonably found that Gray's mental impairment was not severe because it did not meet the duration requirement; and (3) that the ALJ sufficiently fulfilled her duty to develop the record, and that Magistrate Judge Francis was incorrect to find that the ALJ should have waited to rule on Gray's claim until more information was available on Gray's mental impairment.

In light of the Commissioner's objections, the Court considers de novo the ALJ's findings regarding the severity and duration of Gray's mental impairment.  For the reasons stated below, the Court concludes that, in addressing these issues, the ALJ applied the law incorrectly and made a finding not supported by substantial evidence.

### a. Legal Error

#### i. Legal Standard

"Disability," for purposes of awarding disability benefits under the Social Security Act, is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).

The SSA uses a five-step sequential evaluation process to determine if a claimant is disabled pursuant to this definition of disability. The ALJ's actions at the second step of this process are at issue here.

At the second step in the evaluation process, the SSA considers the severity and the duration of a claimant's impairment. According to SSA regulations, if the SSA concludes at this step that a claimant does not have "a severe medically determinable physical or mental impairment that meets the duration requirement," then the SSA finds the claimant not to be disabled. 20 C.F.R. § 416.920.

Although whether an impairment is severe *and* whether an impairment meets the duration requirement are both addressed at step two in the evaluation process, these are separate questions that require separate analyses. The severity of an impairment has to do with the extent to which it limits a claimant's ability to do "basic work activities." 20 C.F.R. § 416.921. The duration of an impairment has to do with whether the impairment, unless expected to result in death, has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. Courts, therefore, reverse for legal error SSA decisions that inappropriately conflate the analysis of severity with the analysis of duration. See, e.g., Stadler v. Barnhart, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) ("[t]o state that an

12

impairment is not severe because it does not meet the twelve-month requirement . . . is inconsistent with the Commissioner's own interpretation of the regulations.")

In making decisions about whether a claimant is disabled, the SSA has a duty to develop the record. Pursuant to SSA regulations, the SSA must, before making a determination that a claimant is not disabled, develop the claimant's "complete medical history for at least the 12 months preceding" the month in which the claimant files her application. 20 C.F.R. § 416.912(d); see also DeChirico v. Callahan, 134 F.3d 1177, 1184 (2d Cir. 1998). When the evidence received from a claimant's medical sources is inadequate to determine whether the claimant is disabled, the SSA must re-contact the medical sources to try to obtain the necessary information. 20 C.F.R. § 416.912(e). Courts have held that the affirmative duty to develop the relevant medical history becomes even more important when the claimant is unrepresented. See, e.g., Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990).

### ii. Application

The ALJ committed legal error below both by inappropriately conflating the analysis of the severity of Gray's mental impairment with its duration, and by insufficiently fulfilling her duty to develop the record on Gray's mental impairment.

First, the ALJ committed legal error when she concluded that

13

because Gray's mental impairment did not meet the duration requirement, it was "a nonsevere impairment." As noted above, severity and duration are separate considerations that require separate analyses.[2]  See, e.g., Stadler, 464 F. Supp. 2d at 189. The Court notes that analyzing severity and duration separately is not only the correct procedure based on the letter of the law, but is also the procedure that better fulfills the remedial objectives of the Social Security Act.  Clarity in explaining the reason why a claimant fails to show that she is disabled assists the claimant in responding to the SSA's findings, and assists the claimant in either appealing those findings, or refiling her claim, if appropriate.

The ALJ also erred in failing to sufficiently develop the record.  After learning of Gray's mental impairment, the ALJ requested information only from Gray's psychiatrist, Dr. Stewart. The ALJ knew that Dr. Korenstein had prescribed Remeron to alleviate Gray's mental health symptoms six months before Gray began seeing Dr. Stewart, yet the ALJ never contacted Dr.

---

[2] SSR 82-52 also supports the conclusion that severity and duration must be analyzed separately.  According to SSR 82-52, adjudication on the basis of insufficient duration means that "a claim which would have been allowed must instead be denied because the claimant's impairment was not or will not be disabling for at least 12 months."  Although it is unclear whether this command specifically applies at step two of the sequential evaluation process, SSR 82-52 nonetheless indicates that the duration and the disabling impact of an impairment are intended to be distinct conceptual categories.

Korenstein. Similarly, the ALJ knew that Gray reported having experienced symptoms of depression for approximately two years, yet the ALJ did not re-contact Dr. Foldes, Gray's primary doctor, to inquire about the severity or duration of these symptoms.

Additionally, the ALJ failed to question effectively the one person she did contact, Dr. Stewart. Dr. Stewart's response did not make clear whether he had considered both severity and duration when he declined to respond to the Questionnaire because it required a "longitudinal analysis." The ALJ should therefore have re-contacted Dr. Stewart and informed him that it would be appropriate for him to address these questions separately, that is, first to describe the effect of Gray's mental impairment on her functional capacity at present, and second to indicate whether he believed that the impairment had lasted, or was likely to last, at least twelve months. In fact, the record does not indicate that the ALJ <u>ever</u> asked Dr. Stewart whether Gray's major depressive disorder had lasted or was likely to last twelve months. Rather, the record suggests the ALJ assumed that because Gray had recently begun seeing a psychiatrist, her mental health symptoms were of "recent onset," a conclusion, that as discussed next, is unsupported by the evidence.[3]

---

[3] The Commissioner objects to Magistrate Judge Francis' recommendation that the ALJ, before ruling on whether Gray was disabled, should have waited until Dr. Stewart felt able to provide a longitudinal assessment of Gray's ability to work. Because the Court modifies the Report's analysis on this issue,

      b. <u>Findings Unsupported by Substantial Evidence</u>

  The Court also concludes that the ALJ's findings that Gray's mental impairment was of "recent onset," and that Gray was "newly diagnosed" with a mental impairment in April 2002, are not supported by substantial evidence.  Rather, almost all information on the record suggests that Gray's mental impairment had lasted at least six months, if not closer to two years.  Specifically, in records available to the ALJ, Gray stated that she had been experiencing depressive symptoms for two years.  Gray also stated that she had been receiving medical treatment for symptoms commonly associated with depression, such as stress and insomnia, for at least six months prior to the hearing.

  The Commissioner argues that because Gray testified that the Remeron was prescribed for insomnia and stress, rather than for depression, the ALJ was justified in discounting Gray's treatment with Remeron as an indicator that Gray's depression began prior to April 2002.  The fact, however, that Gray was suffering from insomnia and stress so severe that medical intervention was necessary, supports, rather than weakens, a finding that Gray had an ongoing mental impairment.  In addition, the ALJ should not have found that Gray's colloquial characterization of her

---

the Court need not resolve this objection.  Regardless of whether waiting to rule was advisable, the ALJ did not fulfill her duty to develop the record.

16

symptoms outweighed contradictory medical evidence.  Dr. Stewart's records from his initial consultation with Gray specifically state that Gray had been prescribed Remeron for "severe depression."[4]

Overall, the record does not contain substantial evidence to support the ALJ's findings regarding the recent onset of Gray's mental impairment.  On remand, after fully developing the record, the ALJ must consider all available evidence, and make specific findings as to when Gray's mental impairment began, and how long it was reasonably expected to last.[5]

### 2.  Residual Functional Capacity

In another section of the Report, Magistrate Judge Francis provides guidance to the ALJ that on remand she must (1) consider even non-severe medical impairments, in accordance with 20 C.F.R.

---

[4] The Court notes that according to the Physician's Desk Reference, Remeron is indicated solely for the treatment of major depressive disorder.  2009 PDR 7400-5550.

[5] The Commissioner objects to Magistrate Judge Francis' recommendation that the ALJ should have used SSR 83-20 to determine the "onset date" of Gray's mental impairment.  The Commissioner argues, and cites case law in support of the proposition, that SSR 83-20 explicitly applies only to the determination of the onset date of a "disability."  Accordingly, the Commissioner argues that SSR 83-20 was not applicable to the ALJ's determination of the onset date of Gray's mental impairment, which had not yet been found to be disabling.

Again, because the Court modifies the Report's analysis, the Court need not resolve this objection.  Regardless of whether SSR 83-20 was applicable to the ALJ's analysis, the ALJ's ultimate decision was not supported by substantial evidence.

§ 416.945(a)(2), in evaluating Gray's RFC; and (2) use the grids only as a guide in determining whether Gray is disabled. The Commissioner did not object to either of these recommendations, and therefore the Court reviews them only for clear error.

Finding no clear error, the Court adopts these points of guidance to the ALJ on remand.

III. Conclusion

For the reasons stated above, the Court GRANTS Gray's motion for judgment on the pleadings (D.E. 15), and DENIES the Commissioner's motion for judgment on the pleadings (D.E. 11). The Court vacates the Commissioner's decision as to Gray's mental impairment, and remands the case, pursuant to the fourth sentence of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this opinion. The Clerk of the Court is directed to close this case; any pending motions are moot.

SO ORDERED.

Dated:   New York, New York
         June 8, 2009

*(signature)*

KIMBA M. WOOD
United States District Judge